RECEIVED
IN ALEXANDRIA, LA.

SEP 3 0 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **WEBSTER J. SAUCIER** | **CIVIL ACTION NO. 12-1567 (LEAD)** <br> **CIVIL ACTION NO. 12-1007 (MEMBER)** |
| -vs- | **JUDGE DRELL** |
| **UNITED STATES, et al.** | **MAGISTRATE JUDGE KIRK** |

## RULING

Before the Court is the Motion for Summary Judgment filed by all Defendants. Appropriate responses have been filed, and the matter is ready for disposition. For the following reasons, the motion will be **GRANTED**.

I.  **Background**

In April 2011, Plaintiff, Webster Saucier, filed a Petition in the Ninth Judicial District Court, Rapides Parish against Dr. Rong Yi Chen, Karen Saucier McPherson, and Joe McPherson for violation of privacy regarding Mr. Saucier's medical information. Defendants removed the matter to this Court. (Docket No. 12-1007). Mr. Saucier subsequently filed a Complaint against the United States, Dr. Chen, and the McPhersons for invasion of privacy under the Federal Tort Claims Act (FTCA). (Docket No. 12-1567; Doc. 1). On February 5, 2013, Magistrate

Judge Kirk consolidated the two actions. (Docket No. 12-1567; Doc. 20).[1] The Motion for Summary Judgment applies to all of Plaintiff's claims in both of these consolidated actions.

According to the Complaint, on March 4, 2010, Webster Saucier was admitted to the Veteran's Administration Medical Center (VAMC) in Pineville, Louisiana. (Doc. 1-1). At the time, Mr. Saucier's wife, Verna Saucier, was listed as having his power of attorney.[2] (Doc. 34-3).

Also, Jacqueline Washington, a social worker at the VAMC, testified in a deposition that one of Mr. Saucier's daughters, Sheila Salley, told Ms. Washington Verna Saucier was "senile and incompetent, didn't have a good memory." (Doc. 34-3). Ms. Washington, however, had spoken with Verna Saucier and had concluded she was competent to receive information. (Doc. 34-3).

On March 10, 2010, Mr. Saucier listed Sheila Salley as his healthcare agent in Ms. Washington's record of his VA Advance Directive. (Doc. 26-2). Mattison Wade Salley, Sheila's son, was listed as the alternate healthcare agent. (Doc. 26-2). On March 18, 2010, Mr. Saucier executed a written general power of attorney in favor of Sheila Salley, which appears in full in the record. (Doc. 26-2).

Mr. Saucier claims Dr. Chen, his treating physician at the VAMC, provided his daughter, Karen Saucier McPherson, and her husband, Joe McPherson, with

---

[1] All remaining document numbers referenced are from the lead case (Docket No. 12-1567).

[2] The extent of the power of attorney is not in the record.

confidential medical information. (Doc. 1-1). Both of the McPhersons deny visiting Mr. Saucier at the VAMC during his hospitalization in 2010, purportedly making such a disclosure impossible. (Docs. 31-2; 31-3). However, Dr. Chen vaguely remembers seeing the McPhersons at the VAMC at some point, because he recognized Mr. McPherson, who is a former Louisiana state senator. (Doc. 31-1).

Another participant in the drama, Hillee Salley Netherlin, Mr. Saucier's granddaughter, alleges she and Dr. Chen argued, on May 21, 2010, about alleged improper disclosures of Mr. Saucier's medical information. (Doc. 34-2). She claims Dr. Chen then admitted having disclosed some of Mr. Saucier's medical information to the McPhersons. (Doc. 34-2). Immediately after the argument, Mrs. Netherlin says she went to the administrative building to speak with the director of the nursing home located on the VA premises to file a complaint about Dr. Chen. (Doc. 34-2). Dr. Chen admits he argued with Mrs. Netherlin about Mr. Saucier's discharge plan, but he denies they discussed anything about whether he disclosed information regarding Mr. Saucier to any person. (Doc. 34-1). We note that nowhere is Salley Netherlin named as having a power of attorney to seek medical information on Mr. Saucier as of May 21, 2010.

The VAMC acknowledges that it held multiple interdisciplinary (Inter-D) meetings to discuss Mr. Saucier's treatment, medication, and discharge planning. (Doc. 34-1). The Inter-D meetings contained a team of medical and care professionals including a physician, the chief of the nursing home, a social

worker, a nursing practitioner, and other various care providers. (Doc. 34-1). The record contains a sign-in sheet showing Mr. and Mrs. Saucier and their son Mark were present for an Inter-D meeting on March 18, 2010. (Doc. 34-7). However, the record notes there were also Inter-D meetings on May 2, 2010 and May 26, 2010, but it does not contain any sign-in sheets or other documentation from those meetings. (Docs. 34-1; 34-2). Based on Dr. Chen's deposition testimony, the McPhersons may have been present for the May 2, 2010 Inter-D meeting. (Doc. 34-1). The record also shows Mrs. McPherson was present for the May 26, 2010 Inter-D meeting, but she was asked to leave before the meeting began. (Doc. 34-2).

On May 27, 2010, Mr. Saucier expressly requested his medical information be disclosed only to Sheila Salley, Hillee Salley Netherlin, and Mattison Wade Salley. The Complaint asserts Dr. Chen discharged Mr. Saucier from the VAMC on June 2, 2010. (Doc. 1-1).

In the current motion, Defendants argue Mr. Saucier is unable to identify any improperly released privileged information. In the alternative, Defendants contend that if an unauthorized disclosure was made, it was reasonable under the circumstances. On either ground, Defendants believe they are entitled to summary judgment.

4

## II. Law & Analysis

### A. Motion for Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). It is important to note the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### B. Federal Tort Claims Act (FTCA)

It is well settled that "'the United States as sovereign, is immune from suits save as it consents to be sued.'" Creel v. United States, 598 F.3d 210, 213 (5th Cir. 2010) (quoting Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998)). "'Absent a waiver of sovereign immunity, the federal government is immune from suit.'" Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 664 (5th Cir. 2007) (quoting Lewis v. Hunt, 492 F.3d 565, 570 (5th Cir. 2007)).

The FTCA constitutes a limited wavier of the federal government's immunity from suit. See Linkous, 142 F.3d at 275. "The United States has partially waived

5

its sovereign immunity in the FTCA, which subjects the United States to tort liability if a private person would be liable for the same act under state law." Life Partners, Inc. v. United States, 650 F.3d 1026, 1030–31 (5th Cir. 2011) (citing 28 U.S.C. § 1346(b)).

We observe that "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign." Linkous, 142 F.3d at 275. Therefore, the limited waiver of sovereign immunity found in the FTCA must be strictly construed in favor of the federal government. See Leleux v. United States, 178 F.3d 750, 754 (5th Cir. 1999).

### C. Invasion of Privacy in Louisiana and the Health Insurance Portability and Accountability Act of 1996

Louisiana recognizes an action for invasion of privacy "when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest." Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1389 (La. 1979) (internal citations omitted). Mr. Saucier asserts a claim for an invasion of privacy from an unreasonable public disclosure of private facts. He claims he has a privacy interest in his medical records and alleges the HIPAA[3] standard governs disclosures of his individually identifying medical information.

HIPAA prohibits unauthorized disclosures of personal healthcare information. 42 U.S.C. § 1320d, *et seq.* Under HIPAA, a health care provider is

---

[3] HIPAA is the acronym for the "Health Insurance Portability and Accountability Act" of 1996.

6

allowed to use or disclose health information to the individual, for treatment, payment, or health care operations, or if there is a valid authorization for disclosure. 45 C.F.R. § 164.502. HIPAA also preempts state law unless the provision of state law relating to the privacy of individually identifiable health information is more rigorous than HIPAA's standards. 45 C.F.R. § 160.203. HIPAA does not provide a private right of action, but the standard shows a privacy interest is implicated when there is an unauthorized disclosure of private medical information.

**D. Analysis**

We note the record contains multiple factual disputes regarding the existence, or lack thereof, of communication between certain individuals. First, the McPhersons claim they never went to the VAMC or attended meetings with Mr. Saucier's healthcare professionals. (Docs. 31-2; 31-3). However, Dr. Chen alleges he remembers seeing them at the May 2, 2010 Inter-D meeting. (Doc. 31-1). Second, Hillee Salley Netherlin claims Dr. Chen told her he disclosed Mr. Saucier's medical information to the McPhersons. (Doc. 31-5). While Dr. Chen denies this, there appears to be a factual dispute in the record about whether a disclosure occurred. Matt Salley, Mr. Saucier's grandson, remembers conversations with the McPhersons about putting Mr. Saucier in a nursing home and selling all of his personal property. (Doc. 34-6). Mr. Salley also testified Mr. McPherson "knew

7

every single thing there was" about Mr. Saucier's condition and Mrs. McPherson used to "run her mouth" about Dr. Chen. (Doc. 34-6).

However, even if communications were made to the McPhersons, there is no record evidence that any supposed communications actually contained <u>prohibited</u> medical information or that even, if so, the disclosures were unreasonable, all of which would then require "balancing the conflicting interests at stake." <u>Jaubert</u>, 375 So. 2d at 1389.  Such interests include "the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct." <u>Id.</u> Repeating, even though some say there may have been conversations with Dr. Chen, we have *no* proof that any prohibited medical information was actually disclosed to an improper person. See <u>Green v. Alaska Nat. Ins. Co.</u>, 759 So.2d 165, 167 (La. App. 4 Cir. 2000) (discussing in dicta circumstances relative to invasion of privacy as to medical records).

Put succinctly, even with discovery completed, the record is devoid of details regarding the nature of supposed prohibited disclosures, if any, that were made. Plaintiff has not presented testimony in response to the summary judgment motion about the purpose, circumstances, or any medical necessities (or lack of same) involved in the alleged disclosures. Therefore, we have nothing before us to show private information was actually conveyed to unauthorized persons. While it is Defendants' burden to satisfy the lack of genuine dispute of material fact before summary judgment should be granted, here, there is absolutely nothing in

8

the well developed record to support Plaintiff's claim. Thus, summary judgment is still appropriate. This determination is important, because the Court even granted Plaintiff additional time for discovery to flesh out the matter of whether prohibited medical disclosures could be documented. (Doc. 28). Plaintiff has presented only suggestions that some disclosure was made, but with no showing of the actual content that would have been prohibited. It would require that we attempt to divine what was supposedly said. That we cannot do.

### E. Conclusion

For the reasons detailed above, Defendants' Motion for Summary Judgment (Doc. 23) will be **GRANTED**. Plaintiff's claims in these consolidated suits will be **DISMISSED with PREJUDICE**. In our discretion, we will also **DISMISS** Defendants' counterclaim for state damage remedies **without prejudice** to their right to refile in state court should they deem it appropriate.

SIGNED on this 30th day of September, 2013 at Alexandria, Louisiana.

/s/ Dee D. Drell

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE